**In the Matter of Catherine B. SPENDAL, Debtor.**

**Catherine B. SPENDAL, Plaintiff,**

**v.**

**John E. ESTES and Steven P. Shutty, Defendants.**

**Bankruptcy No. 80–01755–SJ. Adv. No. 81–1494–SJ.**

United States Bankruptcy Court, W. D. Missouri, St. Joseph Division.

Oct. 8, 1981.

As Corrected Feb. 10, 1982.

Jeffrey Marcus, Kansas City, Mo., for plaintiff.

David P. Hargrave, Kansas City, Mo., for defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT RESTRAINING AND ENJOINING FORECLOSURE ON REAL PROPERTY UNTIL FURTHER ORDER OF COURT

DENNIS J. STEWART, Bankruptcy Judge.

This action demonstrates one of the pitfalls in a secured creditor's declining to request relief from the automatic stay during the pendency of the title 11 case and then proceeding with foreclosure after the grant of a discharge in bankruptcy. Such a method of proceeding ignores the fact that, under the provisions of § 524(a)(2) of the Bankruptcy Code, a discharge

"operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover, or affect any [discharged] debt as a personal liability of the debtor, or from property of the debtor, whether or not discharge of such debt is waived."

Ordinarily, when a secured creditor holds a valid and perfected security interest in real property of the debtor in chapter 7 proceedings and he desires to foreclose the debtor's interest in that property, he seeks relief from the automatic stay from the bankruptcy court during the pendency of the chapter 7 proceedings. In such an action, the court usually hears evidence of the validity and perfection of the claimed security interest and of the balance due to the lienholder and the value of the property. The burden is on the lienholder in this regard to establish the debtor's lack of equity in the property. See § 362(g)(1) of the Bankruptcy Code to the effect that "the party requesting ... relief [from the automatic stay] has the burden of proof on the issue of the debtor's equity in the property."

Simply awaiting the entry of discharge does not, however, obviate the necessity for sustaining the burden of proof. The above quoted provisions of § 524 are assurance of that.

Thus, in this action, when foreclosure proceedings were initiated by the defendants subsequent to the discharge in bankruptcy of the debtor Catherine Spendal, she requested injunctive relief from this court, asserting that the defendants had no interest in the property—located at 7410 N.W. Autumn in North Kansas City, Missouri— which might properly provide the basis for the proposed foreclosure. It was her contention that, in truth and fact, she had executed no security agreement on that property in favor of the defendants.

The court conducted its hearing on the merits of this contention on September 23, 1981, at which time the plaintiff appeared personally and by her counsel, Jeffrey R. Marcus, Esquire. The defendants appeared by David Hargrave, Esquire, their counsel, and the defendant John Estes also appeared personally. The evidence showed that, in November 1979, the debtor Catherine Spendal was the owner of a residence in Harrisonville, Missouri. She desired to purchase from the defendant John Estes the property located at 7410 N.W. Autumn in North Kansas City, Missouri, and to take up resi-

dence there. She and Mr. Estes arrived at the following agreement: She would buy the property at 7410 N.W. Autumn from Mr. Estes for a total purchase price of $41,500.00. Some $34,000.00 of the purchase price was furnished by a loan from the Regional Investment Company which accordingly took a note therefor and a first deed of trust on the property located at 7410 N.W. Autumn. The remainder of the purchase price was to be paid as a $6,000.00 down payment from the proceeds of a possible sale of the debtor's property in Harrisonville and approximately $1,500.00 in an unspecified manner.[1] To this end, she had given Mr. Estes a deed to the Harrisonville property in February 1979.

In November 1979, she executed the documents memorializing the arrangement between herself and Mr. Estes and the Regional Investment Company. These documents included, as is material to the action now at bar, a note to Mr. Estes for the $7,500.00 and a second deed of trust on the property located at 7410 N.W. Autumn. Mr. Estes executed a deed reconveying the Harrisonville property to Mrs. Spendal.

It is the contention of Mrs. Spendal, however, that she did not intentionally execute any deed of trust on the property at 7410 N.W. Autumn in favor of Mr. Estes; that, although her genuine signature admittedly appears on that deed of trust, she only signed a blank document which was presented to her by the real estate broker[2] as the deed of trust in favor of Regional Investment Company and she mistook it for such; and that her oath was not taken before the notary public who verified her signature on the document. Her testimony in this regard is directly contradicted by that of Mr. Estes, who states that these documents were signed by Mrs. Spendal in his presence; that they were plainly filled in when Mrs. Spendal signed them so that their meaning was or should have been

clear; and that Mrs. Spendal affixed her signature to the documents in the presence of a notary public who affixed her jurat and seal to the deed of trust in verification of Mrs. Spendal's signature, although Mr. Estes did not see the notary public render an oath to Mrs. Spendal.

It was demonstrated to the court by the plaintiff that the notary public is not available as a witness in this court. When her jurat and certificate appears regular on its face, and therefore stands wholly unimpeached; and when the testimony of Mr. Estes supports a conclusion that Mrs. Spendal knowingly and intentionally executed the deed of trust on 7410 N.W. Autumn in his favor; and when the deed on the Harrisonville property, which was formerly intended to serve as security for the $7,500.00 for which a loan was otherwise not obtained, was returned to Mrs. Spendal, the great weight of the available probative evidence supports the validity of the deed of trust executed in favor of Mr. Estes.

The evidence which is available, however, also establishes that the deed of trust held by Mr. Estes is a second deed of trust, junior in priority to the $34,000.00 first deed of trust held on the same property by the Regional Investment Company. There is little question that a debtor in title 11 proceedings cannot modify a security interest in his residence, see § 1322(b)(2) of the Bankruptcy Code, and this axiom appears to apply to a junior, as well as to a senior, security interest.

But the general law governing junior security interests imposes some limits to the extent and manner in which they may be exercised. Generally, in Missouri and elsewhere, a junior deed of trust cannot be enforced to an extent which would cause it to diminish the value of a senior deed of trust.[3] Accordingly, it has been held that a junior lienor may not foreclose when the

---

1. The sum of $7,500 was to be paid in addition to the monies produced by the $34,000 mortgage given to the Regional Investment Company.

2. The testimony is unanimous to the effect that the real estate agents dictated which documents were signed by the parties at closing.

3. See cases and authorities in 59 C.J.S. *Mortgages* § 514 pp. 845–846.

value of the property does not exceed the balance due to the senior lienor.[4] These principles are especially compelling when the grantor of the successive deeds of trust is, as in the case at bar, a debtor in title 11 proceedings seeking economic rehabilitation under the provisions of the Bankruptcy Code.

 If, under the provisions of that Code, the defendants in this action had properly requested relief from the automatic stay or from the above-quoted injunction accompanying the discharge, the value of the property would now be established by virtue of the evidence offered in those proceedings. It could thereby readily be seen whether there is an excess in value of the property at 7410 N.W. Autumn over the balance due to the Regional Investment Company. But when the defendants have not bothered previously to request leave from the court to prosecute the proposed foreclosure, the court cannot assume that the excess which would warrant the second lienor's foreclosure actually exists.

The failure to request relief from the stay prior to the granting of the discharge in bankruptcy to the debtor, moreover, works a special kind of prejudice to the debtor in a case such as that at bar. For, if the excess value does exist,[5] then the debtor may have desired,[6] at the final discharge hearing conducted by the court to reaffirm the indebtedness to Mr. Estes. But her opportunity to do so has been obviated by the failure seasonably to apply for relief to the bankruptcy court.

It is therefore, for the foregoing reasons,

ORDERED AND ADJUDGED that the defendants be, and they are hereby, restrained and enjoined from commencing or continuing foreclosure proceedings upon the above described property located at 7410 N.W. Autumn unless and until they apply for relief to this court on a showing that there is value in excess of the balance due to the first lienor to permit foreclosure, whereupon the debtor will be granted an opportunity, upon such showing, to reaffirm the indebtedness prior to the court's granting relief from this injunction.

---

4. *Id.,* p. 845: "The existence of this right where the first mortgage exceeds the value of the land has been both affirmed and denied. However, such foreclosure may not include the interest of the senior mortgagee without his consent; and the junior mortgagee cannot compel a foreclosure of the senior mortgage by maintaining a bill in his own name for the foreclosure of both mortgages."

5. Which, as noted above, is not shown by any evidence presently before the court.

6. It would appear that, because the underlying indebtedness is discharged in bankruptcy, leaving only the defendants' possible interest in the property, a reaffirmation would be effective and proper if the debtor desired to undertake it.